GENEVIEVE C. CHANG, Appellant-Appellant,
v.
STATE OF HAWAII DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS AND DEPARTMENT OF EDUCATION, Appellees-Appellees
No. 27949.
Intermediate Court of Appeals of Hawaii.
October 17, 2008.
On the briefs:
Charles K.Y. Khim, for Appellant-Appellant
Mark J. Bennett, Attorney General of Hawaii Frances E.H. Lum, Li-Ann Yamashiro, James E. Halvorson, David Fitzpatrick, Deputy Attorneys General for Appellee-Appellee, S/H Department of Labor and Industrial Relations and Appellee-Appellee State of Hawai`i, Department of Education

SUMMARY DISPOSITION ORDER
FUJISE, Presiding Judge, LEONARD, J., and Circuit Judge CHAN in place of RECKTENWALD, C.J., WATANABE, FOLEY, and NAKAMURA, JJ., all recused
Appellant-Appellant Genevieve C. Chang (Chang) appeals from the Final Judgment of the Circuit Court of the First Circuit (Circuit Court), entered on April 25, 2006, affirming the Employment Security Appeals Referee's Office Decision 0501590, in favor of Appellees-Appellees State of Hawai`i, Department of Labor and Industrial Relations (DLIR) and State of Hawai`i Department of Education (DOE).[1] Chang, a substitute teacher, filed a claim for unemployment insurance benefits, which was denied by the Unemployment Insurance Division. The denial was affirmed by the Employment Security Appeals Referee's Office (Appeals Office) of DLIR. The Circuit Court affirmed the decision of the Appeals Office.
Chang raises four points of error on this appeal, which can be fairly and succinctly summarized as follows: The Circuit Court erred in affirming the denial of Chang's unemployment insurance benefits for her unemployment during the "Extended School Year" for special education students, which Chang contends was erroneously found to be a summer school program, and in failing to give precedential effect to an August 27, 2003 DLIR Decision that awarded benefits to Chang under nearly identical circumstances.
After a careful review of the record and the arguments and supporting authorities presented by the parties, we resolve Chang's points of error as follows:
Under HRS 383-29(b)(1), unemployment insurance benefits are not payable between "two successive academic years."[2] In Harker v. Shamoto, 104 Hawai`i 536, 92 P.3d 1046 (App. 2004), this court held:
In light of . . . (3) the use of the phrases "academic years" and "regular terms" in HRS § 383-29(b)(1); (4) the legislative history and purpose of HRS § 383-29(b)(1) (Supp. 2003); (5) HAR Rule 12-5-39; and (6) the December 24, 1986 "Unemployment Insurance Program Letter No. 04-87" issued by the United States Department of Labor, we conclude that HRS § 383-29(b)(1) was written so that when, based on DOE wages, a regular teacher or a substitute teacher applies for unemployment benefit payments for the period after the end of one school year and the beginning of the succeeding school year, the merits of the application will be decided without any consideration of the facts that (a) some schools have a summer school term, and (b) some regular teachers (and possibly some substitute teachers) are summer school teachers. The Hawaii Employment Security Law contemplates that a regular teacher who teaches during the regular school year or term will be on vacation during the summer break. The fact that some regular teachers are employed as teachers during the summer or that some regular teachers are involuntarily unemployed as teachers during the summer does not change that contemplation.
Thus, a regular teacher who teaches during the regular school academic year or term is not eligible for unemployment benefits during the summer break even when one or more summer school teaching positions was or were available and unsuccessfully sought. For purposes of the Hawaii Employment Security Law, summer school teaching positions are unrelated to, totally separate from, and unconnected with teaching positions during the regular school academic year or term.
The Hawaii Employment Security Law does not apply a different rule in the case of a substitute teacher. Thus, a substitute teacher who teaches during the regular school year is not eligible for unemployment benefits during the summer break even when one or more summer school substitute teaching positions was or were available and unsuccessfully sought. For purposes of the Hawaii Employment Security Law, summer school substitute teaching positions are unrelated to, totally separate from, and unconnected with substitute teaching positions during the regular school academic year or term.
Id. at 545, 92 P.3d at 1055 (emphasis added). In sum, we held that, pursuant to HRS § 383-29(b), a substitute teacher was not eligible for unemployment benefits during the summer break even if he or she sought summer substitute teaching positions because summer school positions, which arise during the summer break between the regular academic year terms, are unrelated to regular school year positions.
Based on the record in this case, we reject Chang's argument that the "Extended School Year" program was a mandatory extension of the school year for special education students, rather than an alternative summer school program offered to special education students at some schools.
The holding in Harker controls the outcome in this case notwithstanding any prior inconsistent ruling by the DLIR. Harker effectively overruled the August 27, 2003 DLIR Decision relied on by Chang. Under Harker, Chang was ineligible to receive the disputed unemployment benefits in this case.
For these reasons, we affirm the Circuit Court's April 25, 2006 Final Judgment.
NOTES
[1] The Honorable Eden Elizabeth Hifo presided.
[2] HRS § 383-29(b)(1) (Supp. 2004) provides:

Benefits based on service in an instructional, research, or principal administrative capacity in an institution of education shall not be paid to an individual for any week of unemployment which begins during the period between two successive academic years, or during a similar period between two regular terms, whether or not successive, or during a period of paid sabbatical leave provided for in the individual's contract, if the individual performed such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any institution of education in the second of such academic years or terms.
(Emphasis added.)